IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAN GARBETT,<br><br>    Plaintiff,<br><br>v.<br><br>GARY HERBERT, in his official capacity as Governor of Utah, and SPENCER COX, in his official capacity as Lieutenant Governor of Utah,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY AND DECLARATORY JUDGMENT AND GRANTING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>2:20-cv-00245-RJS-JCB<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Plaintiff Jan Garbett sought to appear on the general-election ballot as the Republican Party nominee for the Utah 2020 gubernatorial race. To do so, she first needed to secure a spot on the Republican primary-election ballot by gathering a requisite number of signatures. Garbett maintains she was on track to reach the necessary signature threshold when the novel coronavirus (COVID-19) quickly developed into a global pandemic, upending daily life and disrupting Garbett's signature-gathering efforts.

On April 14, 2020, Garbett sought relief in this court through a motion for preliminary injunction. She argued that the emergency measures implemented by Defendants Governor Gary Herbert and Lieutenant Governor Spencer Cox (collectively, the State) to combat the COVID-19 crisis, along with the State's refusal to modify the signature-gathering requirements, violated her associational rights under the First Amendment and her right to equal protection under the Fourteenth Amendment. Following an expedited hearing on Garbett's motion, the court fashioned an equitable remedy, lowering the number of signatures required proportionate to the

number of days Garbett was prevented from gathering signatures due to the Governor's emergency executive orders.

Even at the court-imposed lower threshold, Garbett was unable to provide enough valid signatures to qualify for the Republican primary-election ballot. Garbett was therefore not listed on the ballot as a potential candidate for governor, and the 2020 Utah gubernatorial election has since come and gone.

Now before the court is Garbett's Motion for Summary and Declaratory Judgment[1] in which she argues that Utah's signature-collection requirements as applied to her in the 2020 election violated her First Amendment rights.[2] She further asks the court to issue a Declaratory Judgment that Defendants violated Garbett's constitutional rights by imposing severe burdens on her ability to access the 2020 Republican primary ballot.[3]

Also before the court is the State's Cross Motion for Summary Judgment[4] in which it argues that Garbett cannot establish standing because her claims are moot.[5] According to the State, the court lacks jurisdiction to hear the case and may not issue a declaratory judgment because declaratory relief is inappropriate for moot cases. If the court does consider the merits of Garbett's Motion, the State alternatively moves the court to enter a scheduling order to allow the State to conduct discovery on the material allegations in Garbett's claims.[6]

---

[1] Dkt. 50.

[2] Garbett stipulates to the dismissal of her Equal Protection claim under the Fourteenth Amendment. *See id.* at 1 n.1.

[3] *Id.* at 1.

[4] Dkt. 51.

[5] Dkt. 52 (Defendants' Opposition Memo.) at 24–30. To avoid duplicate briefing, the State incorporated into its Cross Motion for Summary Judgment the arguments made in its Memorandum in Opposition to Garbett's Motion for Summary Judgment.

[6] *Id.* at 39–41.

For the reasons explained below, Garbett's Motion is DENIED, and the State's Cross Motion is GRANTED.

## BACKGROUND[7]

Garbett decided to begin her campaign for Governor of Utah as the Republican Party's nominee in February 2020.[8] Under the Utah Election Code, a gubernatorial candidate may qualify for the Republican Party's primary ballot by following one of two nonexclusive routes: (1) selection by state delegates at the Utah Republican Party's convention, or (2) by collecting 28,000 valid signatures from registered Republican voters.[9] Rather than pursue the nomination through the Party's convention, Garbett chose to access the ballot through the signature-gathering route.[10] The deadline to submit the required signatures to Lieutenant Governor Cox was April 13, 2020.[11]

On February 17, 2020, Garbett contracted with I&RCMS, a signature-gathering firm, to gather 35,000 signatures on her behalf by April 8, 2020.[12] She also engaged a second signature-gathering firm, Zero Week, to collect an additional 15,000 signatures.[13] Both firms planned to collect signatures through door-to-door canvassing, and I&RCMS also planned to solicit

---

[7] Because the parties filed cross-motions for summary judgment, the court "provides a neutral summary of the facts, which it will view 'in the light most favorable to the nonmoving party' and 'draw reasonable inferences therefrom' while evaluating the motions in turn." *Stella v. Davis Cty.*, No. 1:18-CV-002, 2019 WL 4601611, at *1 n.1 (D. Utah Sept. 23, 2019) (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012)). The facts are drawn from the parties' briefs and from this court's previous Order Granting in Part Garbett's Motion for Preliminary Injunction. *See* Dkt. 31. Because the parties' Motions for Summary Judgment rely on the same facts and events as the court considered in the Motion for Preliminary Injunction, the court assumes the parties are familiar with the facts and will provide only a brief overview here. A detailed recitation of the facts can be found at Dkt. 31 at 1–9.

[8] *See* Dkt. 50 ¶¶ 2–6.

[9] *See* Utah Code. Ann. §§ 20A-9-407, 20A-9-408 (West 2020).

[10] *See* Dkt. 31 at 3.

[11] Dkt. 50 at 4 ¶ 12.

[12] *Id.* at 3 ¶ 6.

[13] *Id.*

3

signatures at public locations, such as university campuses, outside sporting events, and other high-traffic pedestrian areas.[14] Just as the signature gathering campaigns were becoming fully staffed and beginning to collect signatures in earnest in early March, the COVID-19 crisis spread to Utah.[15]

On March 6, 2020, Governor Herbert declared a state of emergency.[16] This was followed by an order on March 17, 2020, which prohibited gatherings of more than ten individuals.[17] State and local authorities closed public schools and universities, and many other public events were canceled.[18] On March 27, 2020, Governor Herbert issued a Stay Safe, Stay Home Directive that remained in effect until May 1, 2020.[19] Under the directive, individuals were allowed to leave their homes only for essential activities.[20] Several cities and counties also issued their own stay-at-home orders.[21] These emergency orders significantly hindered Garbett's ability to gather signatures in support of her candidacy.

Throughout March, Garbett engaged in communications with the Lieutenant Governor's Office, seeking modification of the signature-gathering requirements.[22] The State refused to lower the 28,000-signature threshold, to allow candidates to collect electronic signatures, or to extend the deadline to submit signatures.[23] Governor Herbert did, however, issue an executive

---

[14] Dkt. 31 at 5.

[15] *Id.* at 4–5; *see also* Dkt. 50 at 4 ¶ 15.

[16] Dkt 50 at 5 ¶ 16.

[17] *Id.* ¶ 20.

[18] *Id.* ¶¶ 17, 22.

[19] *Id.* at 6 ¶¶ 23, 26.

[20] *Id.* ¶ 23.

[21] *Id.* ¶¶ 24, 25.

[22] *Id.* ¶ 32.

[23] *Id.* ¶¶ 59, 61–62.

4

order on March 26, 2020, allowing voters to physically sign a petition supporting a candidate without requiring a witness to verify the signature.[24] This enabled Garbett to engage in remote signature gathering, using hand-addressed letters to registered Republicans to solicit their support.[25] Ultimately, her efforts were unsuccessful. By the April 13 deadline, Garbett collected only 20,874 signatures, and the Lieutenant Governor's Office refused to accept them because they did not meet the required statutory threshold.[26]

## PROCEDURAL HISTORY

On April 13, 2020—the same day the Lieutenant Governor's Office rejected her signatures—Garbett filed this lawsuit.[27] The following day, April 14, 2020, Garbett filed a Motion for Preliminary Injunction, asking the court to either direct Lieutenant Governor Cox to place Garbett on the Republican Party primary ballot or to extend the deadline to complete signature-gathering until after the State and local governments lifted their stay-at-home orders.[28]

At a hearing on April 27, 2020, the court ruled that Garbett was likely to succeed on the merits of her claim that the State had constitutionally impaired her First Amendment right to access the ballot.[29] However, after balancing the burden Garbett faced with the State's interest in ensuring candidates demonstrate a "modicum of support" before securing a place on the ballot,[30]

---

[24] *See* Dkt. 31 at 7–8.

[25] Dkt. 50 at 8 ¶ 39.

[26] Dkt. 31 at 8.

[27] *See* Dkt. 2 (Complaint).

[28] Dkt. 6 (Motion for Preliminary Injunction) at 1–2.

[29] Dkt. 31 at 36.

[30] *See Jenness v. Fortson*, 403 U.S. 431, 442 (1971) ("There is surely an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot—the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election.").

the court declined to accept either of Garbett's proposed forms of relief.[31] The court instead fashioned its own remedy, reducing the number of signatures required based on a pro rata basis.[32]

Using March 12 as the appropriate day for calculating time lost due to the emergency orders, the court determined Garbett lost thirty-three days to gather signatures.[33] The court discounted the lost time proportionally and required Garbett to produce sixty-eight percent of the normal signature requirement, which amounted to 19,040 qualifying signatures.[34] The court further ordered the Lieutenant Governor's Office to accept the signatures Garbett previously attempted to submit and immediately verify how many were valid.[35]

Garbett filed a Motion for Reconsideration on April 29, 2020,[36] which the court denied the following day.[37] On May 1, 2020, Garbett filed a Notice of Interlocutory Appeal to the Tenth Circuit.[38] The State completed its review of Garbett's signatures and filed a Notice of the final signature count on May 2, 2020.[39] The State found that while Garbett had submitted a total of 20,597 signatures, only 8,711 of those signatures were valid, far short of the 19,040-signature threshold imposed by the court's preliminary injunction order.[40] On May 4, 2020, after learning the final count, Garbett notified the court that her appeal had been voluntarily dismissed and her

---

[31] Dkt. 31 at 37.

[32] *Id.* at 37–38.

[33] *Id.* at 38–39.

[34] *Id.*

[35] *Id.* at 40.

[36] Dkt. 29.

[37] *See* Dkt. 35 (Docket Text Order Denying Motion to Reconsider). The court declined to reconsider in order to facilitate a potential appeal by either or both parties.

[38] Dkt. 36.

[39] Dkt. 42.

[40] *Id.* at 2.

motion for injunction before the Tenth Circuit was denied as moot.[41] Garbett and the State now both move for summary judgment.[42]

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law."[43] "Judgment as a matter of law is appropriate when the nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof."[44] Because the parties have filed cross-motions for summary judgment, the court will view the facts "'in the light most favorable to the nonmoving party' and 'draw reasonable inference therefrom' while evaluating the motions in turn."[45]

## ANALYSIS

Garbett moves the court to grant summary judgment on her First Amendment claim so she may also be granted a declaratory judgment confirming that the State violated her constitutional rights.[46] The State maintains the court should deny Garbett's Motion and grant its own request for summary judgment because (1) Garbett's claims are constitutionally moot; (2) her claims are prudentially moot; and (3) the State is entitled to judgment as a matter of law on the merits of Garbett's First Amendment claim.[47] In the alternative, the State moves for a

---

[41] Dkt. 48 (Mandate of USCA as to Notice of Appeal).

[42] Dkt. 50, Dkt. 51.

[43] Fed. R. Civ. P. 56(a).

[44] *City of Albuquerque*, 667 F.3d at 1122 (quotation marks and citation omitted).

[45] *Stella*, 2019 WL 4601611, at *1 n.1 (D. Utah Sept. 23, 2019) (quoting *City of Albuquerque*, 667 F.3d at 1122).

[46] *See* Dkt. 50 at 2.

[47] Dkt. 51 at 2.

scheduling order and discovery to allow the State to investigate the material facts alleged in Garbett's Motion for Summary Judgment.[48]

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."[49]  It is not enough that the dispute was alive when the case was filed; "the parties must continue to have a personal stake in the outcome" at all stages of the judicial proceedings.[50]  Accordingly, before the court can proceed to the merits of the case, it must first determine whether a live controversy still exists.[51]

For the reasons discussed below, the court concludes that Garbett's claims are constitutionally moot.  "Because mootness is a matter of jurisdiction,"[52] the court is precluded from further considering the additional arguments made by either Garbett or the State.  It is also unnecessary for the court to entertain the State's alternative request for a scheduling order.

### I. Garbett's Claims are Constitutionally Moot Because She Failed to Show a Modicum of Support for Ballot Access and Therefore Has No Constitutional Right to Vindicate

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"[53]  A "case" or "controversy" exists when there is: (1) a concrete injury in fact of a legally protected interest, (2) a causal connection between the injury and the challenged

---

[48] *See* Dkt. 52 at 39–41.

[49] *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) (citing *Beattie v. United States*, 949 F.2d 1092, 1093 (10th Cir. 1991).

[50] *Id.*

[51] *See Virginia House of Delegates v. Bethune-Hill*, 139 S.Ct. 1945, 1950 (2019) ("To reach the merits of a case, an Article III court must have jurisdiction.  One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so.") (quotation marks and citation omitted); *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000) (noting that "the court must determine whether a case is moot before proceeding to the merits").

[52] *McClendon*, 100 F.3d at 867.

[53] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (citing U.S. CONST. art. III, § 2, cl. 1).

conduct, and (3) a likelihood that the injury will be redressed by a favorable decision.[54] It is Garbett's burden to demonstrate she has standing to sue by establishing these three elements,[55] which must exist at the time the complaint was filed and must remain "extant at all stages of review."[56] "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot."[57]

The State argues Garbett's claims are moot for two reasons: (1) because Garbett was unable to demonstrate a modicum of support as required to access the ballot, she does not suffer an ongoing injury; and (2) even if Garbett did suffer an injury in the past, that injury is not redressable by the court.[58] Garbett counters that her claim remains live because the injury she suffered falls within an established exception to the mootness doctrine for "wrongs capable of repetition yet evading review."[59] Because Garbett is capable of running for office in the future, and likely to do so again, she maintains that she will continue to be subjected to the State's injurious conduct, meaning this dispute could possibly recur.

The court addresses first the State's mootness arguments, explaining why the case no longer presents a live controversy. The court then turns to Garbett's argument and clarifies why her claims do not fall within the capable-of-repetition-yet-evading-review exception to the mootness doctrine.

---

[54] *See Green v. Haskell County Board of Com'rs*, 568 F.3d 784, 793 (10th Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S 555, 560–61 (1992)).

[55] *See Lujan*, 504 U.S. at 561 (noting that "[t]he party invoking federal jurisdiction bears the burden of establishing these elements").

[56] *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997).

[57] *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) (quotation marks and citations omitted).

[58] *See* Dkt. 52 at 25.

[59] *See* Dkt. 53 (Plaintiff's Reply); *Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5 (1973) (citations omitted).

### A. Garbett's Claims are Moot Because She is Not Suffering an Ongoing Injury That is Amenable to Redress by the Court

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."[60] The State argues Garbett has not suffered an injury in fact because she failed to demonstrate the required modicum of support, and without such a showing, she lacks any constitutional right to access the ballot.[61] The court agrees.

In its Order Granting in Part Garbett's Motion for Preliminary Injunction, this court acknowledged that although Garbett's right to seek access to the ballot is protected by the First Amendment, that right is constrained by the State's compelling interest in ensuring fair and orderly elections—which allows the State to require candidates to demonstrate a modicum of support before being placed on the primary ballot.[62] To balance these important but competing interests, the court crafted a remedy that reflected Garbett's unique circumstances, lowering the signature threshold from 28,000 to 19,040.[63] The court also clarified, "[I]f Garbett fails to meet the reduced threshold, she will have no constitutional right to vindicate."[64]

It is not disputed that Garbett failed to garner the necessary number of signatures to show a modicum of support and was consequently not included on the Republican primary ballot. But as the court explained, she has suffered no injury because her failure to meet the necessary

---

[60] *Lujan*, 504 U.S. at 560 (quotation marks and citations omitted).

[61] *See* Dkt. 56 at 4.

[62] *See* Dkt. 31 at 26.

[63] *Id.* at 37–39.

[64] *Id.* at 35.

requirements means she no longer has a legally protected interest. Once "circumstances change such that the plaintiff's legally cognizable interest in a case is extinguished, the case is moot[.]"[65]

Additionally, the court cannot grant Garbett any kind of effective relief. "In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered . . . will have some effect in the real world."[66] Even if the court were to grant Garbett's motion for summary judgment, it would not modify the rights of the parties in this case[67] nor would it affect the "real world." Because Garbett framed the issues in this case so narrowly—challenging only the signature-collection requirements as applied to her individually and only in the 2020 election year—any judgment rendered in her favor would leave the current state of events unchanged. The Utah Election Code would not be altered, Garbett would continue to be subjected to the same statutory requirements if she ran for office in the future, and the State would continue to retain its interest in ensuring the orderly administration of elections.

Because Garbett has not suffered an injury in fact that could be redressed by a favorable decision from the court, her case is moot.[68]

### B.  Garbett's Case Is Not Capable of Repetition Yet Evading Review

"The capable-of-repetition-yet-evading-review exception to mootness applies in those 'exceptional situations'"[69] where (1) the duration of the challenged conduct is "too short to be fully litigated prior to its cessation or expiration," and (2) there is "a reasonable expectation that

---

[65] *Green*, 568 F.3d at 794.

[66] *Id.* (quotation marks, alterations, and citations omitted).

[67] *See Jordan v. Sosa*, 654 F.3d 1012, 1027 (10th Cir. 2011) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of *litigants in the case before them*.") (emphasis added)).

[68] *See Phelps v. Hamilton*, 122 F.3d 885, 891 (10th Cir. 1997) (noting that the "inability to grant effective relief renders" an issue moot).

[69] *Nathan M. by and through Amanda M. v. Harrison Sch. Dist. No. 2*, 942 F.3d 1034, 1040 (10th Cir. 2019) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).

the same complaining party would be subjected to the same action again."[70]  Garbett's arguments fail on both points.

First, the period of time in which Garbett challenged the State's actions was not too short for the parties to fully litigate the matter nor for the court to provide meaningful relief.  Cases involving election law frequently qualify for the capable-of-repetition-yet-evading-review exception because the issues are often time-sensitive and cannot be fully resolved within a single election cycle.[71]  Indeed, Garbett cites multiple election cases where plaintiffs challenged election laws and qualified for the exception because their claims could not be adequately litigated before the ensuing election.[72]  However, the challenged laws in every case Garbett cites were likely to remain on the books and continue to affect future elections and candidates.

Garbett's circumstances are different.  As she explains, she is not challenging "whether Utah's ballot access framework is constitutional on its face or even whether it would be constitutional were the State not facing the extraordinary circumstances of the Coronavirus crisis."[73]  Rather, she challenges only "Utah's signature-collection requirements as applied to her" in the 2020 election year.[74]  This is the same challenge the court considered when Garbett filed her Motion for Preliminary Injunction on April 14, 2020.[75]  Between the time of that filing and the issuance of the court's decision on April 29, 2020, the matter was fully litigated.  The

---

[70] *Id.* (citation omitted).

[71] *See Barr v. Galvin*, 626 F.3d 99, 105 (1st Cir. 2010) (noting that although the "well-established exception" of capable-of-repetition-yet-evading review "has been applied frequently in election-related cases, not every election case fits within its four corners") (citations omitted).

[72] *See* Dkt. 53 at 2–7.

[73] Dkt. 50 at 13.

[74] *Id.*

[75] *See* Dkt. 6 at 14–15.  Garbett argued that the emergency governmental orders which overlaid the regular ballot access framework regarding signature collection requirements demonstrated "the unconstitutionality of the ballot access scheme as applied [to her] in 2020."

parties fully briefed the issues and presented argument, and the court resolved Garbett's claims by providing her a sufficient remedy—lowering the signature threshold in response to Garbett's unique circumstances. Although the timeframe was expedited, it does not negate the fact that the court fully considered and resolved Garbett's claims before the deadline passed to include her name on the Republican primary ballot.[76]

Moreover, Garbett provides no evidence that her claims were not fully resolved. In her reply memorandum supporting her Motion for Summary and Declaratory Judgment, Garbett notes the Utah Election Code establishes a four-month period for gathering signatures.[77] She then concludes, "That four-month period represents too short a window to complete litigation and, therefore, this matter meets the first requirement for applying the mootness exception."[78] Such a declaration, without any accompanying facts or evidence, is merely a conclusory statement and cannot support Garbett's argument that the mootness exception applies to her case.

In the election cases Garbett relies on to make her argument, the mootness exception applied because the elections came and went before the issues could properly be litigated before the court. The plaintiffs, therefore, still maintained a personal stake in the outcome of the lawsuit. In contrast, it is not the case here that Garbett lost her personal stake because she was unable to fully litigate her claims. Rather, an "intervening circumstance" deprived Garbett of her personal stake.[79] But the intervening circumstance was not the election—it was Garbett's failure to show the required modicum of support to gain access to the ballot before the election even took place.

---

[76] *See* Dkt. 31 at 41. The court extended the certification deadline from April 29, 2020 to May 6, 2020 in order to allow the Lieutenant Governor's Office enough time to verify the signatures submitted on behalf of Garbett.

[77] *See* Dkt. 53 at 3.

[78] *Id.*

[79] *Campbell-Ewald*, 577 U.S. at 160–61.

Second, "[t]o satisfy the second prong of the capable-of-repetition exception to mootness, [Garbett] bears the burden of establishing that it is reasonably likely that [the State] will again violate [her constitutional rights] in the specific ways that she alleges it did in this case."[80] A reasonable likelihood requires more than theoretical possibilities—it demands that "the same complaining party would be subjected to the same action again."[81] Here, Garbett contends her First Amendment rights were violated due to the restrictions on signature gathering imposed by the State's emergency orders related to the COVID-19 pandemic.[82] These orders, which were issued by Governor Herbert to address a once-in-a-century global health crisis, are by their own terms temporary.[83]

In short, there is no reasonable expectation that Garbett would be seeking to access the Republican primary ballot in a future election, through the process of signature gathering, in the midst of a global pandemic, while under the constraint of the same restrictive emergency public health orders issued by the State. As the Tenth Circuit explains, a "legal controversy so sharply focused on a unique factual context w[ill] rarely present a reasonable expectation that the same complaining party would be subjected to the same actions again."[84]

Having established that Garbett's claims are not capable of repetition yet evading review, and thus, not covered by an exception to the mootness doctrine, all that remains is her requested relief of a declaratory judgment confirming that Defendants violated her constitutional rights.

---

[80] *Nathan M.*, 942 F.3d at 1043.

[81] *Id.* at 1041 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

[82] *See* Dkt. 50 at 14–17.

[83] *See* Dkt. 56 (Defendants' Reply) at 7–8.

[84] *Nathan M.*, 942 F.3d at 1043 (quoting *People for Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 424 (D.C. Cir. 2005) (quotation marks omitted)).

## II. Declaratory Relief Is Inappropriate for Moot Cases

The Declaratory Judgment Act states, "In a case of *actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration. . . ."[85] The Tenth Circuit further expounds, "Like any other action, 'actual controversy' is a jurisdictional prerequisite to a declaratory judgment action."[86] Mootness, therefore, is a bar to Garbett's ability to obtain a declaratory judgment. As explained above, Garbett's case is moot and no longer presents an actual controversy. Accordingly, a declaratory judgment is prohibited.[87]

## CONCLUSION

For the foregoing reasons, Garbett's Motion for Summary and Declaratory Judgment[88] is DENIED, and the State's Cross Motion for Summary Judgment[89] is GRANTED. Accordingly, the case is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to close the case.

SO ORDERED this 22nd day of January 2021.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[85] 28 U.S.C. § 2201(a) (emphasis added).

[86] *Cotner v. Knight*, 61 F.3d 915, 1995 WL 441408, at *3 (10th Cir. 1995) (Table) (unpublished).

[87] *See Miller v. Udall*, 368 F.2d 548, 549 (10th Cir. 1966) ("It is quite clear that the Declaratory Judgment Act is not to be used as a means of securing a judicial determination of moot questions.") (quoting 6 Moore's Federal Practice, P57.13, at 3071 (2d ed. 1965)).

[88] Dkt. 50.

[89] Dkt. 51.